TOWN OF RINGLE, a body corporate of Marathon County, Wisconsin, Plaintiff-Appellant-Petitioner,

v.

COUNTY OF MARATHON, a body corporate of the State of Wisconsin, Defendant-Respondent.

Supreme Court

*No. 80–090. Argued September 10, 1981.—*
*Decided November 3, 1981.*

(Also reported in 311 N.W.2d 595.)

For the petitioner there was a brief by *Richard J. Weber* and *Kelley & Weber, S.C.*, of Wausau, and oral argument by *Richard J. Weber*.

For the respondent there was a brief by *Jeffery J. Drach, Leighton W. Boushea* and *Juneau, Johnston, Drach & Minder, S.C.*, of Wausau, and oral argument by *Jeffery J. Drach*.

Amicus curiae brief was filed by *Thomas A. Schroeder*, of Madison, legal counsel for Wisconsin County Boards Association.

HEFFERNAN, J. This is a review of a decision of the court of appeals[1] affirming a summary judgment granted on the motion of Marathon County dismissing a complaint for declaratory judgment brought by the Town of Ringle. Summary judgment was entered by the Circuit Court for Marathon County, DANIEL L. LA-ROCQUE, Circuit Judge, on January 8, 1980.

The question posed in the circuit court, the court of appeals, and in this court is whether Marathon County, without the town's approval, had the statutory authority to establish a zoning classification for county-owned lands in the Town of Ringle when the county zoning ordinance provided for a use classification different than the classification theretofore established by the town zoning ordinance. Both the trial court and the court of appeals concluded that the county had that authority under the express language of sec. 59.97(9), Stats. We affirm the decision of the court of appeals.

Because the Department of Natural Resources directed the closing of a number of sanitary landfill sites in towns of Marathon County and of the landfill site which served the metropolitan Wausau area, the county board decided that a landfill site be acquired for use in the county. After preliminary feasibility studies and after the tentative approval of the Department of Natural Resources, Marathon County acquired a 532-acre parcel of land in the Town of Ringle for the landfill site. Because the Department of Natural Resources required the landfill site to be lined with a four-to-five foot layer of moisture-impervious clay to control and confine the leachate from the site, the county purchased another parcel of land in the Town of Ringle from which the clay could be quarried. Both of these sites had been zoned by the town. The landfill site was zoned partly agricultural and partly recreational. The quarry site was zoned agricultural.

---

[1] *Town of Ringle v. County of Marathon*, 99 Wis. 2d 394, 299 N.W.2d 284 (Ct. App. 1980).

Neither of the county's proposed uses was permissible under the town's zoning ordinance.

Relying upon the provisions of sec. 59.97(9), Stats., relating to county-owned lands, the county board gave notice to the board of the Town of Ringle of its intention to zone the two parcels by county ordinance to change the use classifications to landfill and quarry, respectively.

After notice and public hearing, the county board on August 28, 1979, enacted the ordinances rezoning the two parcels of land. Shortly thereafter, on September 10, 1979, the town started a declaratory judgment action asking for a declaration by the court that the Town of Ringle zoning ordinance prohibited Marathon County from establishment of a landfill site in the town and prohibited the quarrying of clay without first obtaining a conditional-use permit, as required by the Town of Ringle's zoning ordinance. It also asked for a declaration that the county ordinances to permit such uses within the Town of Ringle were invalid. To enforce the declarations sought by the town, it also asked that the county's proposed uses be permanently enjoined.

The circuit court, in granting the defendant county's motion for summary judgment, dismissed the complaint and in its opinion stated that, pursuant to sec. 59.97(9), Stats., the county, under the circumstances of this case, was exempt from the operation of the town ordinances. The judgment of the circuit court, upon appeal to the court of appeals, was affirmed.

The statute which both the circuit court and the court of appeals deemed to be controlling is sec. 59.97(9), Stats. It states:

"ZONING OF COUNTY OWNED LANDS. The county board may by ordinance zone and rezone any lands owned by the county without necessity of securing the approval of the town boards of the towns wherein such lands are

situated and without following the procedure outlined in sub. (5), provided that the county board shall give written notice to the town board of the town wherein such lands are situated of its intent to so rezone and shall hold a public hearing on the proposed rezoning ordinance and give notice of such hearing by posting in 5 public places in the town."

Before considering the effect of sec. 59.97(9), Stats., the history of zoning regulations in Marathon County and the Town of Ringle should be reviewed. Pursuant to the authority granted under sec. 59.97, the Marathon County Board of Supervisors in 1971 enacted the Marathon County zoning ordinance. However, sec. 59.97(5)(c) provides that a county zoning ordinance is not to be effective in any town until it has been approved by the town board. The Town of Ringle refused approval, and accordingly the 1971 Marathon County ordinance was ineffective in the Town of Ringle.

In 1975, under the authority granted by sec. 60.74(7), Stats., the Town of Ringle adopted its own zoning ordinance.[2] Accordingly, when the county sought to establish landfill and clay quarrying sites in the Town of Ringle, these uses were not within the uses permitted by the town ordinance. The county then passed its own zon-

---

[2] "Town boards granted village powers by resolution adopted pursuant to section 60.18(12) shall have power to adopt town zoning ordinances in the manner provided in section 61.35 notwithstanding any provision of this section or section 60.75 provided, however, that in counties which have adopted a zoning ordinance under section 59.97 the exercise of the power to adopt a town zoning ordinance shall be subject to approval by a referendum vote of the electors of the town held at the time of any regular annual town meeting. Any zoning ordinance adopted by a town board and any amendment thereof under this subsection shall be subject to the approval of the county board in counties having a county zoning ordinance."

ing ordinance and established use classifications for the lands it owned which would permit landfill and quarrying operations by the county.

The problem posed in this court is identical to that posed in the trial and appeals courts: Is the authority granted to a county to zone and rezone its own lands so explicit, clear, and unambiguous as to confer that right upon a county despite the existence of a pre-existing and properly enacted town ordinance and despite the fact that, arguably, the county's authority granted by sec. 59.97(9), Stats., is not completely congruent with other zoning provisions enacted by the legislature.

Both parties have inundated this court with opposing rules of statutory construction. The county contends that the language of sec. 59.97(9), Stats., is clear and unambiguous in its specific grant of authority to the county. The town asserts that the plain-meaning rule urged by the county and accepted by the circuit court and the court of appeals ignores the common sense approach, "reading of a statute as a whole, keeping in mind the general purpose and intent of the entire statute."

Relying upon 2A Sutherland, *Statutory Construction* (4th ed., 1973), sec. 46.05, p. 56, the petitioner asserts that it is not proper for a court to confine its interpretation to the one section to be construed. Starting from that premise, the town asserts that, when the entire sec. 59.97, Stats., is considered, it will be found to be replete with numerous required "procedures" which must be followed before a county zoning ordinance can be effective (sec. 59.97(5)) and that "approvals" are required by the statute before a county zoning ordinance has effect in a town.

The town also asserts that sec. 60.74(7), Stats., gives primacy to a town ordinance passed under that section even in circumstances where the town board had previously given its approval of the county ordinance. The general conclusion of the town is that a county can have

zoning authority only in areas that have not been zoned by the town boards under sec. 60.74(7) and then only if the approval of the town board has been obtained.

The town, which contends that sec. 59.97(9), Stats., is not clear, argues that, had the legislature intended to exempt the county-owned lands from the restrictions of town zoning ordinances, it could easily have done so by passing a law that would simply say that county-owned lands are not subject to the restrictions of local ordinances. It argues that under sec. 60.74(5) the zoning powers granted to towns by sec. 60.74 are to be liberally construed.

Finally, it asserts, relying upon sec. 62.23(7)(g), Stats., that, where zoning ordinances conflict, the statute requires that the more restrictive ordinance—in this case the town ordinance—controls.

The numerous arguments in respect to the proper canon of construction to use calls to mind Karl N. Llewellyn's piece on canons of construction—"Thrust and Counterthrust" and "Thrust but Parry"—appearing in *The Common Law Tradition—Deciding Appeals* (Little, Brown & Co., 1960), pp. 521 ff. He quotes a number of rules to illustrate that for almost every rule there is an opposite or qualifying rule.

For example, on page 524 he cites the canon:

"If language is plain and unambiguous it must be given effect."

But as a parry to that canon, he states:

"Not when literal interpretation would lead to absurd or mischievous consequences or thwart manifest purpose."

On page 530 he states the axiom:

" '[T]here is no need to refer to the legislative history where the statutory language is clear.' "

But as a counterthrust, he cites the contrary view:

" 'But words are inexact tools at best, and for that reason there is wisely no rule of law forbidding resort to explanatory legislative history no matter how clear the words may appear on superficial examination.' "

Llewellyn's piece fortifies the town's argument here that the meaning of a statute cannot always be discovered by the application of mechanistic canons. While we believe that the town's approach is in general meritorious and that it is frequently unsafe to rely on too literal an interpretation, we conclude from reading the principal statute itself that the unqualified legislative intention, clearly expressed, was to obviate and supersede any conflicting statutory provisions which the town asserts vitiate or qualify the authority granted to counties by sec. 59.97 (9), Stats.

As an example of a zoning statute which the town considers to limit the counties' authority under sec. 59.97 (9), Stats., the town relies upon sec. 62.23 (7) (g), which it asserts requires that, whenever the provisions of zoning ordinances conflict, the ordinance or statute which imposes the higher or most restrictive standard shall govern. Hence, it is argued that, quite aside from the county's authority to zone under sec. 59.97 (9), that zoning is superseded by the town's more restrictive use. Even were we to conclude that this section of the city zoning statute is relevant to the issue before us, it is immaterial if the town zoning ordinance is nullified in respect to county-owned lands when the county passes its own ordinance. While there is some surface appeal to the town's argument, it assumes that, after the passage of the county ordinance, the town's ordinance is still in effect. This, however, is the issue to be decided. We conclude that there is no existing town zoning ordinance in respect to these areas, and that the town's ordinance has become a nullity because of the county board's action.

The town relies also on sec. 59.97 (5) (c), Stats., which provides:

"A county ordinance adopted as provided by this section shall not be effective in any town until it has been approved by the town board . . . ."

From this the town argues, looking at zoning statutes as a whole, that the county ordinance adopted under sec. 59.97(9), Stats., cannot be effective without town board approval, but we conclude that the necessity for this approval is, however, expressly set aside by sec. 59.97(9) when it states that the county board may zone and rezone lands owned by the county "without necessity of securing the approval of the town boards of the towns wherein such lands are situated and without following the procedures outlined in sub. (5)." Thus, it appears that county-owned lands are *sui generis* and their zoning by the county may be accomplished with only the necessity of the notice and abbreviated procedure set forth in sec. 59.97(9) itself. The only purpose of the hearing is to give the County Board the opportunity to consider the sentiments of the people of the town, but the county board's eventual action is subject to neither referendum of the people of the town nor the approval of the town board. The statute expressly disclaims the necessity for such approval.

Moreover, other portions of the zoning statutes arguably give primacy under some circumstances to the county zoning ordinances. Secs. 59.97(4) and (13) and 60.74(7), Stats.[3] We conclude from reading the zoning

[3] "59.97(4) EXTENT OF POWER. For the purpose of promoting the public health, safety and the general welfare the county board of any county may by ordinance effective within the areas within such county outside the limits of incorporated villages and cities establish districts of such number, shape and area, and adopt such regulations for each such district as the county board

statutes in their totality that there is nothing in them in derogation of the express power given counties by sec. 59.97(9), Stats.

Additionally, the sequence of the passage of the zoning statutes points unequivocally to the interpretation that is urged by the county. The legislature in 1923 granted counties zoning authority by creating sec. 59.97. In 1931, sec. 59.97(6) was added to the statute, which allowed the *zoning* of county-owned lands by action of the county board. In 1947, however, the legislature gave zoning authority to towns by passing ch. 224 of the Laws of 1947, later codified as secs. 60.74 and 60.75. Had nothing more transpired, the grant of authority to towns to zone might well have been interpreted to leave the ultimate zoning authority in the town, even in respect to county-owned lands. However, as the amicus brief of the Wisconsin County Boards Association points out, almost immediately after the passage of ch. 224 the legislature by ch. 516, Laws of 1947, amended sec. 59.97(6) (now renumbered as 59.97(9)) by adding the words, "and *rezone.*" (Emphasis added.) As the result of that amendment, the subsection of the statute with which we are principally concerned now provides:

"The county board may by ordinance zone and rezone any lands owned by the county without necessity of securing the approval of the town boards of the towns shall deem best suited to carry out the purposes of this section. . . ."

"59.97(13) CONSTRUCTION OF SECTION. The powers herein granted shall be liberally construed in favor of the county exercising them, and this section shall not be construed to limit or repeal any powers now possessed by any such county."

"60.74(7) . . . Any zoning ordinance adopted by a town board and any amendment thereof under this subsection shall be subject to the approval of the county board in counties having a county zoning ordinance."

wherein such lands are situated and without following the procedure . . . ."

Bearing in mind the chronology of this statute and the amendment of 1947, it is difficult to understand the town's assertion that there is any ambiguity or lack of clarity in sec. 59.97 (9), Stats. The question posed, and readily answered, is whether the word, "rezone," clearly indicates the legislature's intent to give the county authority to change, by unilateral action of the county board, a use classification previously determined by town board action. Even if we did not look to the legislative chronology, it is apparent that power has been given to the county board to change a use classification which had been previously adopted. This is what "rezone" means. The statute without doubt continues the unilateral and unbridled authority of the county to zone its own lands even in a township which had previously ordained a different use classification.

In addition, even prior to the legislative changes of 1947, the original legislative grant of the authority to "zone" carried with it the implicit authority for the county to rezone a parcel of land previously zoned by the *county*. Hence, to avoid redundancy in the statute, "rezone" as used in the 1947 amendment can only mean a change of zoning by the county of a use classification previously adopted by an authority other than the county —the town board. The effect of this statute, in respect to county lands, is to confer the ultimate power of zoning completely on the county board, and a rezoning by it will abrogate a pre-existing town use classification. Accordingly, the argument of the town earlier referred to that there is a subsisting town ordinance which is more restrictive and thus must be given primacy under sec. 62.23 (7) (g), Stats., is irrelevant. Upon the county's compliance with the zoning provisions of sec. 59.97 (9), the town ordinance in respect to county land is set aside.

No conflict exists. The county ordinance is the only effective ordinance.

The statute on its face is clear and unambiguous. As we said in *National Amusement Co. v. Department of Revenue,* 41 Wis. 2d 261, 267, 163 N.W.2d 625 (1969), it is the duty of the court to "look to the language of the statute itself to determine if 'well-informed persons' *should have* become confused." Under these circumstances, where we see no reasonable chance that a well informed person should have become confused, there is no ambiguity in the statute's language, and it must be interpreted and held to confer upon a county the right to zone and rezone its own land without town approval, without following the procedures set forth in sec. 59.97 (5), Stats. The only procedural requirement is that there be notice given and a public hearing. Upon compliance with these procedures, the town's pre-existing zoning is set aside and the county zoning ordinance is solely applicable to the county lands.

Nothing in the statutes relating to zoning of towns, cities, or villages casts any doubt upon the plain meaning of the statute. The legislative history is not necessary to interpret or to give meaning to the principal statute, but it makes absolutely clear what is already explicit in the statute—that counties may rezone their own property for uses not permitted by existing town zoning laws and without the approval of the town board.

The court of appeals' analysis of the statute and its reliance upon the plain meaning of the statute itself was appropriate in the instant case. We affirm the decision of the court of appeals upholding the circuit court's summary judgment dismissing the complaint of the Town of Ringle.

*By the Court.*—Decision affirmed.