James BRUNO, James Schindler, Edgar Wesling, Fred Antonich, William J. Beam, Lyle H. Bonnin, George A. Bowman, Martha Clark, Rosario Consiglio, Robert G. Francis, John Glowacki, Herbert A. Goetsch, Dorothy Haynes, Kenneth Henrics, George Kozik, Pearl Kulinski, Mary Landis, William Moser, Virginia E. O'Connell, William O. Polley, Rosemary Pulito, Chester Sobush, William Stead, Shirley Whittow, and Bernard Wood, Plaintiffs-Appellants-Petitioners,

v.

MILWAUKEE COUNTY, Milwaukee County Employees Retirement System, and Milwaukee County Pension Board, Defendants-Respondents.

Supreme Court

*No. 01–1970. Oral argument January 16, 2003.—Decided May 1, 2003.*

2003 WI 28

(Also reported in 660 N.W.2d 656.)

For the plaintiffs-appellants-petitioners there were briefs by *Lynne A. Layber*, Milwaukee, and oral argument by *Lynne A. Layber*.

For the defendants-respondents there was a brief and oral argument by *John F. Jorgensen*, principal assistant corporation counsel.

¶ 1. DIANE S. SYKES, J. The issue in this case is whether certain former Milwaukee County employees who qualified for "deferred vested pensions" at the time they terminated their county employment have "retired from the county" within the meaning of the Milwaukee County Code for purposes of receiving a military service pension credit. Applying the plain language of the applicable ordinance provisions, we conclude that the former employees were "retired from the county" and are therefore eligible for the military service pension credit.

¶ 2. In November of 1996, the Milwaukee County Board enacted an ordinance granting a military service pension credit to certain members of the Milwaukee County Employees' Retirement System ("retirement system") who had served in the military during specified

timeframes.[1] The ordinance took effect, prospectively only, on January 1, 1997, and applies to "all retirees who retired from the county before July 1, 1985." Milwaukee County General Ordinances § 201.24(2.10).

¶ 3. After applying for the credit and being denied, 25 former Milwaukee County employees filed this action in Milwaukee County Circuit Court requesting a declaration of entitlement to the military service pension credit.[2] Each former employee is a member of the retirement system, left county employment before July 1, 1985, with a "deferred vested pension," and later (although still prior to July 1, 1985) began receiving payment on the deferred vested pension. *See* M.C.G.O. §§ 201.24(4.5) and 201.24(2.5).

¶ 4. Judge David A. Hansher, Milwaukee County Circuit Court, concluded that the plaintiffs were not eligible for the military service credit, and the court of appeals affirmed. *Bruno v. Milwaukee County,* No. 01–1970, unpublished slip. op. (Wis. Ct. App. Apr. 9, 2002). Both the circuit court and the court of appeals concluded that in order to have "retired from the county" for purposes of the military service credit, a retirement system member must have been old enough to immediately begin drawing a pension at the time he or she left county employment. According to this interpretation of the applicable ordinance provisions, retire-

---

[1] The credit applies only to retirees who were employed by the county for a certain number of years, and who had also performed military service during the period January 1, 1938, through December 31, 1974. *See* Milwaukee County General Ordinances § 201.24(2.10).

[2] In some cases, a member is represented by a spouse who is receiving survivor benefits.

637

ment system members who left county service with deferred vested pensions had not "retired from the county."

¶ 5. We granted the retirees' petition for review, and now reverse. Although none of these retirement system members began collecting a pension immediately upon leaving county employment, each one qualified for a deferred vested pension at the time of termination, and this meets the definition of "retirement" in the Milwaukee County Code. *See* M.C.G.O § 201.24(2.19). Retirement system members who leave county employment with deferred vested pensions have "retired from the county" for purposes of the military service credit.

¶ 6. This case involves the interpretation and application of an ordinance to an undisputed set of facts. "The rules for the construction of statutes and municipal ordinances are the same." *County of Columbia v. Bylewski*, 94 Wis. 2d 153, 169 n.7, 288 N.W.2d 129 (1980). The interpretation and application of an ordinance to an undisputed set of facts is a question of law, which this court decides de novo. *County of Adams v. Romeo*, 191 Wis. 2d 379, 383, 528 N.W.2d 418 (1995).

¶ 7. We begin with the language of the applicable ordinances. "If the plain meaning of the [ordinance] is clear, a court need not look to rules of statutory construction or other extrinsic aids. Instead, a court should simply apply the clear meaning of the [ordinance] to the facts before it." *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 281–282, 548 N.W.2d 57 (1996) (internal citations omitted).

¶ 8. We have "long recognized that when a court construes an ordinance or statute, words must be given their common meaning." *Weber v. Town of Saukville,* 209 Wis. 2d 214, 224, 562 N.W.2d 412 (1997) (citing *State v. Martin,* 162 Wis. 2d 883, 904, 470 N.W.2d 900 (1991) (citations omitted in original)). It is also "well established that technical words or phrases with a peculiar meaning in the law must be construed according to such meaning." *Id.*

¶ 9. The Milwaukee County Code establishes several categories of retirement and sets forth the various requirements a retirement system member must meet in order to qualify for a pension. *See generally* M.C.G.O. § 201.24(4.1) ("normal retirement"); § 201.24(4.2) ("early retirement"); § 201.24(4.3) ("accidental disability retirement"); § 201.24(4.4) ("ordinary disability retirement"); and § 201.24(4.5) ("deferred vested retirement").[3]

¶ 10. Section 201.24(4.5) sets forth the requirements for "deferred vested retirement," also referred to in the code as a "deferred vested pension." *See* M.C.G.O. § 201.24(4.1).[4] Section 201.24(2.19) defines "retirement":

---

[3] "Pension" is defined as "a series of periodic payments which are payable to a person who is entitled to receive benefits under the ordinance." M.C.G.O. § 201.24(2.6).

[4] "A member shall be eligible for a deferred vested pension if his employment is terminated for any cause, other than fault or delinquency on his part, provided that he elects not to withdraw any part of his membership account and that his pension at age sixty (60) is at least ten dollars ($10.00) per month." M.C.G.O. § 201.24(4.5). The ordinance sets forth some exceptions to its general applicability, but none of them are relevant to this case.

Retirement shall mean termination of employment after a member has fulfilled all requirements for a pension. Retirement shall be considered as commencing on the day immediately following a member's last day of employment (or authorized leave of absence, if later), and terminating upon date of death of retiree or beneficiary under option.

M.C.G.O. § 201.24(2.19).

¶ 11. Section 201.24(2.10) states that the military service pension credit "shall apply to all retirees who retired from the county before July 1, 1985." M.C.G.O. § 201.24(2.10). It is undisputed that each of the retirement system members here met all of the requirements for a deferred vested pension and terminated county service prior to July 1, 1985.

¶ 12. Whether these retirement system members are entitled to receive the military service pension credit provided for in section 201.24(2.10) of the Milwaukee County Code depends upon whether they "retired from the county" within the meaning of that section and the related definitional sections of the code. As noted above, "retirement" is a defined term in the code: it means "termination of employment after a member has fulfilled all requirements for a pension." M.C.G.O. § 201.24(2.19). A "deferred vested pension" is a "pension" under the code. M.C.G.O. §§ 201.24(2.6) and (4.5). Indeed, section 201.24(4.5), which sets forth the criteria for deferred vested pensions, is entitled "Deferred vested *retirement*." M.C.G.O. § 201.24(4.5) (emphasis added). The code's definition of "retirement" also states that retirement commences "on the day immediately following a member's last day of employment." M.C.G.O. § 201.24(2.19).

¶ 13. These terms, phrases, and definitions are not ambiguous. A retirement system member who

leaves county service having qualified for a deferred vested pension has "retired from the county" within the meaning of the code.[5] Although an employee leaving county service with a deferred vested pension does not immediately begin to collect payments on that pension, he or she has "fulfilled all requirements for a pension" at the time of termination, which satisfies the definition of "retirement" in the code.

¶ 14. Milwaukee County argues that in order to be "retired from the county" a retirement system member must leave county service and begin drawing pension payments immediately. This interpretation adds words to the definition of "retirement." The code does not define "retirement" as "termination of employment after a member has fulfilled all requirements for a pension *and is old enough to immediately begin receiving pension payments.*" It defines "retirement" as "termination of employment after a member has fulfilled all

---

[5] The court of appeals cited *Webster's Third New Int'l Dictionary* as support for its conclusion that "retirement" requires an employee to leave employment and immediately begin collecting a pension. *Bruno v. Milwaukee County,* No. 01–1970, unpublished slip op. at ¶ 3 (Wis. Ct. App. Apr. 9, 2002) (citing *Webster's Third New Int'l Dictionary* at 1939 (1998)). However, the court of appeals failed to supply any definition from *Webster's,* or any other dictionary definition for that matter. In fact, the *Webster's* definition of the verb "retire" supports the retirees, not the county: "retire" means "to withdraw from office, public station, business, occupation, or active duty." *Webster's* at 1939. *Webster's* defines "retirement" as "withdrawal from office, active service, or business." *Id.* Though our decision here rests on an application of the definition in the code itself (because "retirement" is a defined term in the code), we can find nothing in the dictionary definition of "retire" or "retirement" that would support the county's or the court of appeals' interpretation.

requirements for a pension." The definition does not mention receipt of pension payments.

¶ 15. The ordinance does not confine the term "retirement" to terminations of county service with immediate eligibility to begin drawing a pension. It requires only that the terminating employee has fulfilled the requirements for a pension. Each of the employees in this case terminated employment after having fulfilled all requirements for *a* pension—a "deferred vested pension." M.C.G.O. §§ 201.24(2.19) and 201.24(4.5). Because "[r]etirement shall be considered as commencing on the day immediately following a member's last day of employment," M.C.G.O. § 201.24(2.19), these deferred vested retirement system members "retired from the county before July 1, 1985" for purposes of the military service credit. Payment of the deferred vested pension did not begin until each member's "normal retirement date,"[6] although this, too, occurred before July 1, 1985, for each of these retirement system members.

---

[6] The ordinance provides that upon timely application, "[p]ayment of a deferred vested pension shall commence as of the member's normal retirement date" and shall continue until "the date of death of the retired member." M.C.G.O. § 201.24(4.5).

"Normal retirement date shall be the first day of the month following the date on which the member reaches the minimum ages for normal retirement." M.C.G.O. § 201.24(2.17).

"Normal retirement age shall be fifty-seven (57) for deputy sheriffs and sixty (60) for all other members." M.C.G.O. § 201.24(2.18).

Each of these retirement system members reached the "normal retirement age" and began receiving payment for their deferred vested pensions prior to July 1, 1985.

¶ 16. The Milwaukee County ordinance extending military service pension credit to all those who "retired from the county before July 1, 1985" is clear and unambiguous, as is the definition of "retirement" in the Milwaukee County Code. Together, they plainly state that all those who retired from the county before that date—that is, terminated county employment having "fulfilled all the requirements for a pension"—are entitled to the credit. The county's interpretation of the applicable ordinance provisions ignores their plain language and adds words that are not there. Because these retirement system members terminated county employment before July 1, 1985 and had fulfilled all the requirements for a deferred vested pension at the time of termination, they are entitled to the military service pension credit provided for in M.C.G.O. § 201.24(2.10).

¶ 17. In closing, a few words about the concurrence. The concurrence concludes that the ordinance is ambiguous because we have interpreted its "plain meaning" differently than the lower courts did, and worries that competing "plain meaning" interpretations "undermine[ ] the integrity of the appellate process." Concurrence, ¶ 32. The concurrence refers to the "oft-quoted maxim" of statutory ambiguity that states that a statute is considered ambiguous "when it is capable of being understood in two or more different senses by reasonably well-informed persons." Concurrence, ¶ 31. The concurrence then suggests that "[i]f judges and courts are considered reasonably well-informed persons, then under this ... rule of construction when they differ about an ordinance's 'plain' meaning, the ordinance should generally be considered ambiguous." Concurrence, ¶ 32.

██

¶ 18. This distorts the test for ambiguity by placing the focus on the reasonableness of the person offering the interpretation rather than the reasonableness of the interpretation being offered. Of course judges qualify as "reasonably well-informed persons." So do lawyers. But a disagreement between judges and lawyers about the plain meaning of a statute or ordinance does not always or even generally mean that the statute or ordinance is ambiguous. If it did, then no statute or ordinance disputed in the courts could ever be given its plain meaning, because all statutory or ordinance language would be considered ambiguous. This is not the law.

¶ 19. The ambiguity maxim or canon of construction invoked by the concurrence is more completely stated as follows:

*Test of Ambiguity*

This court has consistently used the same test for ambiguity:

"A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses." *State ex rel. Neelen v. Lucas* (1964), 24 Wis. 2d 262, 267, 128 N.W.2d 425, citing *State ex rel. West Allis v. Dieringer* (1957), 275 Wis. 208, 218, 81 N.W. 2d 533.

Whenever a case such as this one is before the court, however, it is obvious that people disagree as to the meaning to be given to a statute. This alone cannot be controlling. The court should look to the language of the statute itself to determine if 'well-informed persons' *should have* become confused.

644

". . . In construing or 'interpreting' a statute the court is not at liberty to disregard the plain, clear words of the statute." *State v. Pratt* (1967), 36 Wis. 2d 312, 317, 153 N.W.2d 18.

*Nat'l Amusement Co. v. Dep't of Revenue,* 41 Wis. 2d 261, 267–68, 163 N.W.2d 625 (1969) (emphasis in original). *See also Wagner Mobil, Inc. v. City of Madison,* 190 Wis. 2d 585, 592, 527 N.W.2d 301 (1995); *State v. Lossman,* 118 Wis. 2d 526, 534–35, 348 N.W.2d 159 (1984); *Standard Theatres v. State Dep't of Transp.,* 118 Wis. 2d 730, 740, 349 N.W.2d 661 (1984); *Town of Ringle v. Marathon County,* 104 Wis. 2d 297, 308, 311 N.W.2d 595 (1981).

¶ 20. Accordingly, the test for statutory ambiguity focuses first (as it must) on the language of the statute, not the competing interpretations of it offered by lawyers or judges. The statutory language is given its common and ordinary meaning, and technical or specially-defined terms are given the technical or special definitional meaning assigned to them. *Weber,* 209 Wis. 2d at 224. If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.

¶ 21. The presence of different "plain meaning" interpretations by lawyers or judges does not authorize the court to skip this process, assume ambiguity, and begin searching for extrinsic sources of legislative intent. Rather, as the cases cited above hold, the court examines the statutory or ordinance language to determine whether " 'well-informed persons' *should have* become confused," that is, whether the statutory or ordinance language reasonably gives rise to different

meanings. *Nat'l Amusement Co.,* 41 Wis. 2d at 267. A statute is ambiguous if it is susceptible of two or more "equally sensible interpretations." *State ex rel. Angela M.W. v. Kruzicki,* 209 Wis. 2d 112, 122, 561 N.W.2d 729 (1997).

¶ 22. Thus, the court examines the reasonableness of the interpretation, not the general reputation for reasonableness of the person offering the interpretation. Only if there is more than one reasonable interpretation (not more than one interpretation offered by persons generally regarded as reasonable), is there ambiguity. It is the interpretation's reasonableness that counts, not the interpreter's status as a reasonable person.

¶ 23. Here, as we have noted, the circuit court apparently overlooked the ordinance's definition of "retirement" in determining whether these employees were "retired from the county" within the meaning of the military service pension credit. The court of appeals cited but did not apply the definition of "retirement," instead referencing a dictionary definition (without quotation or explanation) that contradicted the conclusion that the court reached. In addition, as we have noted, the interpretation adopted by both lower courts adds words to the ordinance, as the concurrence also recognizes, concurrence, ¶ 34, and thus is not a "plain meaning" interpretation. This, therefore, is not a case of conflicting, reasonable "plain meaning" interpretations; it is a case of lower court error.

¶ 24. The concurrence also concludes that the ordinance is ambiguous because the phrase "from the county" is redundant or "unexplained surplusage," inasmuch as this is a county retirement ordinance appli-

cable only to county employees. Concurrence, ¶ 35. While we attempt to construe statutes and ordinances to avoid surplusages, a statutory redundancy or "unexplained surplusage" does not necessarily require a declaration of ambiguity. The phrase "from the county" may have been unnecessary here (because this is a county retirement ordinance), but that does not render either the definition of "retirement" or the military service pension provision ambiguous. The phrase makes explicit what is already implicit in the ordinance, concurrence, ¶ 35; that is, it reinforces its meaning rather than creates ambiguity. That this reinforcement may have been unnecessary does not require us to search for some alternate meaning other than the obvious.

¶ 25. It is odd that the concurrence would suggest that we are reading the ordinance as if it said "retired from the county from the county." Concurrence, ¶ 36. Statutory interpretation involves the ascertainment of meaning, not a search for ambiguity.[7] The concurrence adopts the latter construct and takes it to a new level, manufacturing ambiguity where it does not exist.

¶ 26. A phrase that makes explicit that which is implicit (i.e., states the obvious) is not the same as a phrase that is repeated twice in a row. If it were, the concurrence might be correct in its assertion that there would be a "need to delete a few words for clarity." Concurrence, ¶ 38. As it is, the phrase "from the county" is not in fact repeated twice in this ordinance, and our straightforward "plain meaning" interpretation

---

[7] Wisconsin courts do not "torture ordinary words until they confess to ambiguity." *W. States Ins. Co. v. Wis. Wholesale Tire, Inc.*, 184 F.3d 699, 702 (7th Cir. 1999).

does not import such a repetition into the ordinance, so there is no need to delete anything in order to arrive at clarity.

¶ 27. For example, if my law clerk gets up from his desk at around lunchtime and says, "I am going out to eat," I readily understand this to mean he is going out to eat *lunch.* If instead he says, "I am going out to eat lunch," his statement is not rendered ambiguous because he has explicitly (if unnecessarily) identified the meal he is about to eat. The word "lunch" may be surplusage, but there is no ambiguity and certainly no need to look for some alternate meaning or explanation for his inclusion of the word "lunch" where it is otherwise unnecessary. He is only making explicit what is implicit in the shorter statement. A "plain meaning" interpretation of "I am going out to eat lunch" does not "in essence" read "I am going out to eat lunch lunch," as suggested by the concurrence, merely because "lunch" was already implicit. Concurrence, ¶ 36.

¶ 28. In short, the applicable ordinance provisions are unambiguous.[8] These former county employees left county service having qualified for deferred vested pensions and within the applicable time frame specified in the military service pension credit. Deferred vested pensions are "pensions" within the meaning of the code.

---

[8] The concurrence concludes by referring to the "obvious purpose of the ordinance," and asserts that "there is no apparent reason" for the exclusion of deferred vested pensioners from the military service credit. Concurrence, ¶ 40. The concurrence also concludes that "the language of the ordinance supports the petitioners' interpretation more strongly than the county's interpretation." Concurrence, ¶ 39. If the "obvious purpose" and the "language of the ordinance" support one interpretation, and there is "no apparent reason" for any alternate interpretation, then the ordinance is unambiguous.

This meets the definition of "retirement" in the code. Accordingly, the former employees are "retired from the county" within the meaning of the military service pension credit, and are entitled to receive it.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 29. JON P. WILCOX, J., did not participate.

¶ 30. ANN WALSH BRADLEY, J. *(concurring).* I write separately to express my disagreement with the majority opinion's reliance on the plain meaning canon to interpret this Milwaukee County ordinance. I find the ordinance to be ambiguous. Nevertheless, I concur in the majority's result because I find it to be the more reasonable interpretation in light of the language and purpose of the ordinance.

¶ 31. The majority begins and ends its analysis by relying on the plain meaning maxim of statutory/ordinance construction: "if the plain meaning of the [ordinance] is clear, a court need not look to rules of statutory construction or other extrinsic aids." Majority op., ¶¶ 7, 16. What the majority fails to acknowledge in this cursory approach is another oft-quoted maxim of statutory/ordinance interpretation: a statute is ambiguous when it is capable of being understood in two or more different senses by reasonably well-informed persons. *Stockbridge School Dist. v. DPI,* 202 Wis. 2d 214, 222, 550 N.W.2d 96 (1996); *Ervin v. City of Kenosha,* 159 Wis. 2d 464, 472, 464 N.W.2d 654 (1991); *State v. Caldwell,* 154 Wis. 2d 683, 687, 454 N.W.2d 13 (Ct. App. 1990).

¶ 32. Here, the circuit court and all three judges of the court of appeals, examining the same language, also found the meaning of this ordinance to be "plain" —but came to the opposite interpretation of what the

649

majority today deems to be "plain." If judges and courts are considered reasonably well-informed persons, then under this latter rule of construction when they differ about an ordinance's "plain" meaning, the ordinance should generally be considered ambiguous. The tug of war between courts over opposite plain meaning constructions undermines the integrity of the appellate process.

¶ 33. Our task is to discern the intent of the legislature. Here, I find the language of the ordinance to be ambiguous, not only because of the opposite plain meaning interpretations but also because I conclude that both interpretations are reasonable.

¶ 34. The phrase in the ordinance that is the subject of interpretation is: "shall apply to all retirees who retire from the county." The circuit court and the judges of the court of appeals reasonably interpreted it to mean that it applies to members who leave county service and begin immediately drawing pension payments. The majority correctly notes that such an interpretation adds words to the definition of "retirement."

¶ 35. The majority's interpretation, however, has its own problems. The majority sets forth the phrase in question, "shall apply to all retirees who retire from the county," but then only focuses on the second part of the phrase. Since this is a county retirement plan, the word "retirees" implicitly means that it applies to those who retire from the county. Thus, the additional words "from the county" is unexplained surplusage. When an ordinance is redundant or contains surplusage, it is not "clear and unambiguous."

¶ 36. The majority explains away its construction which incorporates surplusage as serving merely to reinforce its meaning rather than creating any ambiguity. Majority op., ¶ 24. One could argue that its con-

650

struction which in essence reads "retired from the county from the county" is not reasonable. I, however, do not advance that position.

¶ 37. The majority's effort to explain away the surplusage is undermined by the fact that the "from the county" phrase was not included in parallel language within the very same section. The parallel language describes the military service credit eligibility of post-1985 retirees rather than the pre-1985 retirees at issue before us. The section reads:

> The provisions of this section shall apply to all retirees who retired between July 1, 1985 and January 26, 1989 and to retirees who retired after January 26, 1989 and were not represented by a collective bargaining unit immediately prior to their retirement.
>
> . . . .
>
> Effective solely with respect to pension payments payable on and after January 1, 1997, the provisions of the preceding paragraph shall apply to all retirees who retired from the county before July 1, 1985.

M.C.G.O. § 201.24(2.10). It is unclear why the County Board would find it necessary to reinforce the meaning of this language by adding "from the county" in one instance and not the other. A reasonable inference is that the County Board intended that its selective use of the phrase have some meaningful effect. The majority's opinion fails to acknowledge or explain this inconsistent treatment.

¶ 38. Nevertheless, I find each interpretation to be reasonable, but not without its own problems. One interpretation is burdened with the need to add a few words for clarity and the other suffers from the need to delete a few words for clarity.

651

¶ 39. Although I conclude that the ordinance is ambiguous, this does not mean that the language of the ordinance does not favor one interpretation over the other. For the reasons set forth in the majority opinion, I agree that the language of the ordinance supports the petitioners' interpretation more strongly than the county's interpretation.

¶ 40. In addition, given the obvious purpose of the ordinance to recognize the valuable military service provided by county employees, there is no apparent reason why the county board would single out and exclude deferred vested pensioners from this recognition. These factors lead to the conclusion that the ordinance was intended to make the petitioners eligible for the military service credit. Accordingly, I concur.

¶ 41. I am authorized to state that SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE, joins this concurrence.