STARK, P.J.
¶ 1 Healthcare Services Group, Inc., (HSG) appeals a circuit court order affirming a decision of the Wisconsin Tax Appeals Commission (the Commission). The issue on appeal is whether the Commission properly determined that services HSG provides to its customers qualify as "laundry services" under WIS. STAT. § 77.52(2)(a)6. (2015-16),[1] and are therefore subject to a five percent sales tax. We conclude the statutory term "laundry services" is unambiguous, and the services at issue in this case plainly fall within that term. We further conclude that Manpower Inc. v. DOR , Wis. Tax Rep. (CCH) ¶ 401-223 at 36,413 (WTAC 2009)-the principal case on which HSG relies-is distinguishable. We therefore affirm the circuit court's order upholding the Commission's decision.
BACKGROUND
¶ 2 The underlying facts are undisputed. HSG provides contract cleaning services to more than 3000 clients, sixty-six of which are Wisconsin nursing homes, retirement centers, and rehabilitation facilities. HSG enters into a "service agreement" with each of its clients. In a letter submitted to the Wisconsin Department of Revenue (the Department), HSG explained that, under its standard service agreement, HSG "provides management, supervision, labor and materials necessary for performing housekeeping and laundry services" for its clients.[2] In the same letter, when describing *637 its "[l]aundry functions," HSG stated the "tasks performed are the laundering and processing of the personal clothing of residents and patients, as well as the collecting and laundering of sheets, pillow cases, blankets and other linen items used in a healthcare facility."
¶ 3 After HSG signs a service agreement for a particular client location, it typically hires the client's existing laundry department workforce. Those workers, once employed by HSG, continue to work on-site at the client's facility, using the client's equipment. HSG's on-site employees are supervised by an account manager, who is also employed by HSG. In addition to supervising HSG's employees, the account manager is responsible for ensuring that the client's needs are met, addressing personnel and discipline issues, attending daily department meetings held by the client, and communicating with the client's management about HSG's services. Each account manager is supervised by a district manager, who is also an HSG employee but is not located at a client location.
¶ 4 The precise method by which HSG performs its operations depends on the unique characteristics of the individual client and facility. After a client contracts with HSG, the procedures used to process laundry at the client's facility typically do not change. HSG employees generally continue to perform their duties in the same manner as they did when employed by the facility. Each facility establishes its own policies and procedures, to which HSG must adhere. In addition, a facility's administrator may give direction to HSG's account manager regarding personnel matters, such as cell phone usage, drug testing, and uniforms. However, the account manager retains day-to-day authority over HSG's workers, including the power to hire, train, and discipline them.
¶ 5 HSG receives monthly payments from its clients in exchange for its services. HSG describes its services as "laundry services" on the bills it submits to its clients. HSG is responsible for paying all wages, salaries, and other compensation owed to its employees, and it also deducts and remits withholding taxes for them.
¶ 6 HSG has previously described itself as a provider of "laundry services" in various documents. For instance, in its standard service agreement, HSG states it will "provide all necessary management, supervision, labor and materials necessary to perform the ... laundry services on the premises of the Facility." In addition, on a form filed with the United States Securities and Exchange Commission (SEC) for the fiscal year 2006, HSG stated, "We believe that we are the largest provider of housekeeping and laundry services to the long-term care industry in the United States." HSG further explained:
Laundry and linen services represent[ ] approximately 23% or $116,254,000 of consolidated revenues in 2006. Laundry services involve the laundering and processing of the residents' personal clothing. We provide laundry service to all of our housekeeping clients. Linen services involve providing, laundering and processing of the sheets, pillow cases, blankets, towels, uniforms and assorted linen items used by our clients' facilities.
¶ 7 For the tax years 2006 through 2009, HSG did not charge, collect, or remit sales taxes on payments it received for laundry services from its Wisconsin clients. The Department subsequently audited HSG for those tax years and determined that HSG owed $605,459.07 in sales tax for those services, plus $270,084.84 in interest. The Department relied on *638 WIS. STAT. § 77.52(2)(a)6., which imposes a five percent sales tax on businesses that "sell[ ], licens[e], perform[ ] or furnish[ ] ... [l]aundry, dry cleaning, pressing, and dyeing services."
¶ 8 HSG petitioned the Department for a redetermination of its sales tax assessment, which the Department denied. HSG then appealed that denial to the Commission. After considering the undisputed facts set forth above, the Commission upheld the Department's sales tax assessment, concluding HSG's services were taxable under WIS. STAT. § 77.52(2)(a)6. because the "very essence of HSG's activity [was] to provide laundry services" for its clients. HSG filed a petition for rehearing, which the Commission denied.
¶ 9 HSG then sought circuit court review of the Commission's decision, under WIS. STAT. § 73.015. The circuit court affirmed, concluding HSG "provides laundry services to its clients, and thus falls within [ WIS. STAT. §] 77.52(2)(a)6." HSG now appeals.
DISCUSSION
¶ 10 "In an appeal following a decision of the Tax Appeals Commission, we review the Commission's decision, not the circuit court's." Xerox Corp. v. DOR , 2009 WI App 113, ¶ 8, 321 Wis.2d 181, 772 N.W.2d 677. Because the facts of this case are undisputed, the only issue on appeal is the proper interpretation of WIS. STAT. § 77.52(2)(a)6. The interpretation and application of a statute are questions of law. State v. Jones , 2018 WI 44, ¶ 27, 381 Wis.2d 284, 911 N.W.2d 97.
¶ 11 We review an administrative agency's legal conclusions "under the same standard we apply to a circuit court's conclusions of law-de novo." Tetra Tech EC, Inc. v. DOR , 2018 WI 75, ¶ 84, 382 Wis.2d 496, 914 N.W.2d 21. However, "upon such review due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it." WIS. STAT. § 227.57(10). Our supreme court recently clarified that the term "due weight," as used in § 227.57(10), means "giving 'respectful, appropriate consideration to the agency's views' while the court exercises its independent judgment in deciding questions of law." Tetra Tech , 382 Wis.2d 496, ¶ 78, 914 N.W.2d 21. In other words, due weight "is a matter of persuasion, not deference." Id.
¶ 12 Statutory interpretation begins with the language of the statute. State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶ 45, 271 Wis.2d 633, 681 N.W.2d 110. We give statutory language its common, ordinary, and accepted meaning, except that technical or specially defined words or phrases are given their technical or special definitional meanings. Id. In addition, we interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id. , ¶ 46. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." Id. (quoting Bruno v. Milwaukee Cty. , 2003 WI 28, ¶ 20, 260 Wis.2d 633, 660 N.W.2d 656 ).
¶ 13 Ambiguity arises when a statute is susceptible to more than one reasonable interpretation. Id. , ¶ 47. "When the legislature imposes a tax, it must do so in clear and express language with all ambiguity and doubt in the particular legislation being resolved against the one who seeks to impose the tax." Kearney & Trecker Corp. v. DOR , 91 Wis.2d 746, 753, 284 N.W.2d 61 (1979). Nonetheless, while *639 "the benefit of the doubt shall be given to the taxpayer in cases where the language imposing the tax is ambiguous," id. , a court "is not to search for doubt in an endeavor to defeat an obvious legislative intention," National Amusement Co. v. Wisconsin Dep't of Taxation , 41 Wis.2d 261, 267, 163 N.W.2d 625 (1969) (citation omitted).
¶ 14 In this case, we agree with the Department that WIS. STAT. § 77.52(2)(a)6. is "about as clear and unambiguous as it gets." The statute imposes a five percent sales tax on businesses that sell, license, perform, or furnish "laundry ... services."[3] Sec. 77.52(2)(a)6. Although § 77.52 does not expressly define "laundry" or "services," we give those terms their common, ordinary, and accepted meanings, see Kalal , 271 Wis.2d 633, ¶ 45, 681 N.W.2d 110, which may be ascertained by reference to a recognized dictionary, see Door Cty. Highway Dep't v. DILHR , 137 Wis.2d 280, 293-94, 404 N.W.2d 548 (Ct. App. 1987). The New Oxford American Dictionary defines "laundry" as "clothes and linens that need to be washed or that have been newly washed," or "the action or process of washing such items." Laundry , NEW OXFORD AMERICAN DICTIONARY (2001). The related term "launder" is defined as "wash and iron (clothes or linens)."[4] Launder , NEW OXFORD AMERICAN DICTIONARY (2001). "Service," in turn, is defined as "the action of helping or doing work for someone." Service , NEW OXFORD AMERICAN DICTIONARY (2001). Taken together, these definitions demonstrate that the plain, unambiguous meaning of the statutory term "laundry services" is work done for another to wash soiled clothes and linens.
¶ 15 As HSG correctly observes, unambiguous statutory language "may be rendered ambiguous by the context in which it is sought to be applied." State v.Herman , 2002 WI App 28, ¶ 14, 250 Wis.2d 166, 640 N.W.2d 539 (2001). However, that is not the case here. The undisputed facts of this case plainly show that, in exchange for a fee, HSG washes its clients' soiled clothes and linens. When describing its own services to the Department, HSG stated it "launder[s] and process[es] ... the personal clothing of residents and patients" and "collect[s] and launder[s] ... sheets, pillow cases, blankets and other linen items used in a healthcare facility." HSG made similar representations to the SEC. HSG does not dispute that these representations accurately reflect the work its employees perform. On these facts, HSG clearly provides "laundry services" to its clients within the meaning of WIS. STAT. § 77.52(2)(a)6.
¶ 16 HSG nevertheless argues that the statutory term "laundry services" is ambiguous as applied to the facts of this case because of the "broad and comprehensive nature of the departmental service offered by HSG to its client at the client location." HSG emphasizes that it provides each of its clients with an entire laundry department, which HSG manages and oversees. It contends WIS. STAT. § 77.52(2)(a)6."is ambiguous as to whether or not the recruiting, hiring, training, managing, and *640 maintaining of a qualified and dependable housekeeping and laundry staff (or the outsourcing of entire housekeeping and laundry departments) is the type of laundry service meant for taxation."
¶ 17 We are not persuaded. Although the undisputed evidence shows that HSG engages in managerial and supervisory functions, we agree with the Commission that the "administrative aspects of managing and supervising are for the purpose of seeing that the laundry services get done." HSG "is responsible for client laundry," and without HSG, "these clients' dirty linens would not be cleaned." As the Commission aptly noted, the primary purpose of HSG's contracts with its clients "is not to have HSG merely provide a laundry department manager or the attendant managerial and administrative functions, it is for the client to obtain laundry services." HSG cannot evade the tax on laundry services simply by calling its services "departmental" or "managerial," when the essence of those services is to clean its clients' laundry.
¶ 18 HSG also contends that, because its account managers attend department-head meetings at client facilities, and because facility administrators "define the relationship between HSG and the facility," HSG is "intertwined" with its clients and therefore does not provide "straight laundry services," as contemplated by WIS. STAT. § 77.52(2)(a)6. This argument fails for three reasons. First, by its plain language, § 77.52(2)(a)6. refers to laundry services, not "straight" laundry services. Second, HSG cites no legal authority distinguishing between so-called "straight" and "intertwined" services. Third, virtually all companies that sell taxable services are "intertwined" with their clients to some degree, in that they receive direction from their clients on how to provide the relevant services. HSG does not develop a compelling argument that its business model is unique in this regard, such that the laundry services it provides are not taxable under § 77.52(2)(a)6.
¶ 19 HSG also emphasizes that it provides its services "at the client location" and typically hires the client's existing workforce. However, HSG fails to explain the relevance of those facts. WISCONSIN STAT. § 77.52(2)(a)6. simply states that laundry services are taxable; it does not condition the taxability of laundry services on the location where they are performed or the employment history of the workers performing them. As explained above, based on the undisputed facts of this case, HSG clearly performs laundry services for its clients.
¶ 20 In an attempt to avoid the unambiguous language of WIS. STAT. § 77.52(2)(a)6., HSG relies heavily on the Commission's Manpower decision. In that case, Manpower, which was classified as a temporary help company under WIS. STAT. § 108.02(24m), provided temporary employees to various clients to perform a wide variety of tasks. Manpower , Wis. Tax. Rep. (CCH) ¶ 401-223 at 36,414. In 2004, the Department audited Manpower for the years 1996 through 1999 and determined it owed over $1.9 million in sales and use taxes and interest. Id. The Department justified its position using a "Look Through" approach to sales tax, asserting that, whenever a worker placed by Manpower performed one of the taxable services enumerated in § 77.52(2)(a), Manpower was responsible for paying sales tax on that service. Manpower , Wis. Tax. Rep. (CCH) ¶ 401-223 at 36,416.
¶ 21 The Commission rejected the Department's position, concluding WIS. STAT. § 77.52(2) was ambiguous as applied to Manpower's services. Manpower , Wis. Tax. Rep. (CCH) ¶ 401-223 at 36,419. The Commission observed that "temporary *641 help services" were not one of the specific categories of taxable services listed in § 77.52(2)(a). Manpower , Wis. Tax. Rep. (CCH) ¶ 401-223 at 36,422. The Commission therefore determined the statutory language was susceptible to two reasonable interpretations: (1) that temporary help services were "a subset of services and, hence, potentially taxable"; and (2) that temporary help services were "something fundamentally different and nontaxable." Id. at 36,419. The Commission further concluded that extrinsic aids to interpretation, such as legislative history, did not resolve this ambiguity. Id. at 36,419-20.
¶ 22 Ultimately, the Commission reasoned that the "substance and realities" of the services Manpower provided did not support a conclusion that those services were taxable. Id. at 39,421. The Commission explained:
First, the workers that Manpower sends out are in many ways essentially substitutes or stand-ins for the purchaser's own work force, and the wages of one's own workforce, as the Department agrees, are clearly not subject to sales and use tax. Second, once at a job site, a Manpower employee may wind up doing tasks that are clearly non-taxable based on the purchaser's needs on that particular day, which calls into question the nature of the original transaction itself. Third, the minute-by-minute recordkeeping requirements suggested by the Department are significantly more burdensome than those normally required of a seller subject to sales tax. Fourth, there are at least two major differences between a taxable service and a service provided by a temporary help company: (1) Manpower does not control the employee performing the taxable service; and (2) Manpower does not guarantee a particular result.
Id. Based on these factors, the Commission determined there was a "reasonable doubt" as to whether "temporary help services and the taxable services listed in the statute are the same thing." Id. The Commission therefore resolved the statutory ambiguity in favor of Manpower. Id. at 36,422.
¶ 23 HSG argues the services it provides to its clients are analogous to the "temporary help services" that were at issue in Manpower . We disagree. Manpower was classified as a "temporary help company" under WIS. STAT. § 108.02(24m). Under that subsection, a temporary help company is defined as an entity that, in addition to other requirements, "contracts with a client to supply individuals to perform services for the client on a temporary basis to support or supplement the workforce of the client in situations such as personnel absences, temporary personnel shortages, and workload changes resulting from seasonal demands or special assignments or projects." Sec. 108.02(24m). HSG did not contract with its clients to provide workers on a temporary basis in order to supplement the client's workforce due to transitory personnel demands. Rather, HSG contracted to provide the personnel and supplies necessary to clean the client's laundry for a contractually defined period, so that the client could avoid doing that task itself. HSG's role is therefore fundamentally different from that of a temporary help company.
¶ 24 Moreover, the five factors that the Commission identified in Manpower as weighing against the taxation of "temporary help services" are not applicable here. HSG focuses on the first factor-i.e., that Manpower sent workers to serve as "substitutes or stand-ins" for its clients' employees. See Manpower , Wis. Tax Rep. (CCH) ¶ 401-223 at 36,421. HSG argues that, like Manpower, it uses its employees *642 to "substitute the client's own workforce." However, HSG does not provide substitute or stand-in workers in the same way that Manpower did. Manpower's clients requested workers with varying skills-for instance, typing, accounting, and computer programming-and once Manpower supplied those workers, Manpower's clients supervised them. Id. at 36,414-15. In contrast, HSG supplies its employees to perform a specific service for its clients-i.e., the cleaning of dirty laundry-under the supervision of HSG-employed managers.
¶ 25 The other Manpower factors further distinguish the "temporary help services" in that case from the laundry services that HSG provides for its clients. The Commission noted in Manpower that, once placed at a job site, Manpower employees could "wind up doing tasks that [were] clearly non-taxable based on the purchaser's needs on that particular day." Id. at 36,421. Because Manpower was "generally ... unaware of the specific tasks performed by its workers," its management "[did] not know if the tasks that [were] being performed would be considered a taxable service by the Department."Id. at 36,415. Conversely, as relevant to this appeal, HSG's employees perform only laundry services, which are specifically designated as taxable in WIS. STAT. § 77.52(2)(a)6. Moreover, unlike Manpower, HSG is clearly aware of the specific tasks that its workers perform at client facilities.[5]
¶ 26 Turning to the next Manpower factor, the Commission was concerned in that case that the Department's "Look Through" approach to sales tax would result in the imposition of unreasonable "minute-by-minute recordkeeping requirements." Manpower , Wis. Tax Rep. (CCH) ¶ 401-223 at 36,421. HSG does not argue that any similar concerns are present in the instant case.
¶ 27 As for the next factor, the Commission in Manpower emphasized that Manpower "[did] not control the employee performing the taxable service." Id. The same cannot be said here, as it is undisputed that HSG's account managers supervise and direct the work that HSG employees perform at client facilities. While HSG contends its services are "driven by a facility's unique needs and system of operation," the mere fact that HSG accommodates each facility's needs does not mean that it lacks control over its own employees. Indeed, HSG's account managers retain day-to-day authority over HSG's workers, including the power to hire, train, and discipline them.
¶ 28 Finally, the Commission's Manpower decision relied on the fact that Manpower did not "guarantee a particular result." Id. HSG argues that, like Manpower, it "does not guarantee any quantifiable result" but instead "only agrees to provide management, supervision, labor and materials necessary." This statement, however, begs the question: necessary for what? The answer is found in HSG's service *643 agreements, which state that HSG will provide all "management, supervision, labor and materials necessary to perform the ... laundry services on the premises of the Facility ." (Emphasis added.) Thus, HSG does not merely agree to provide supervision, labor, and materials; it agrees to provide those things in order to perform laundry services . Stated differently, the "result" HSG guarantees is that its clients' laundry will be cleaned.
¶ 29 For all of these reasons, we reject HSG's argument that the taxation of its services is inconsistent with Manpower . We instead conclude, based on the undisputed facts and the unambiguous language of WIS. STAT. § 77.52(2)(a)6., that HSG clearly provides taxable laundry services. We therefore affirm the circuit court's order upholding the Commission's decision.
By the Court. -Order affirmed.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted. The version of Wis. Stat. § 77.52(2)(a)6. that was in effect during the audit period in this case differed slightly from the current version in three respects. Compare Wis. Stat. § 77.52(2)(a)6. (2005-06), and Wis. Stat. § 77.52(2)(a)6. (2009-10), with Wis. Stat. § 77.52(2)(a)6. (2015-16). Because these three differences are not material to the issues raised on appeal, and following the parties' lead, we refer to the current version of the statute.

HSG's housekeeping services are not at issue in this appeal. HSG bills its clients separately for housekeeping services and laundry services, and the Department has not assessed any sales tax on HSG's housekeeping services.

Wisconsin Stat. § 77.52(2)(a)6. exempts three narrow categories of laundry services from taxation: services "performed on raw materials or goods in process destined for sale"; services "performed on cloth diapers by a diaper service"; and services "performed by the customer through the use of self-service machines." It is undisputed that none of these exemptions apply in the instant case.

Similarly, in a different subchapter of Wis. Stat. ch. 77, the legislature defined "launder" as "to use water and detergent as the main process for cleaning apparel or household fabrics." Wis. Stat. § 77.996(7).

HSG argues that some of the tasks its employees perform are "clearly not taxable"-for instance, "attending department head meetings, attending residents council, maintaining and organizing a central linen closet for nursing staff, [and] assisting residents with their personal laundry." Yet, as the Department observes, HSG cites no evidence showing that it billed its clients for those tasks as part of its charge for laundry services. Furthermore, as explained above, while it is undisputed that HSG employees perform some managerial and administrative functions, those tasks are performed for the purpose of providing HSG's clients with clean laundry. Again, HSG cannot avoid taxation of its laundry services simply by relabeling those services as managerial or administrative, when the end goal of its contracts is to provide laundry services.