Yolanda WESTON, Petitioner-Appellant,

v.

WISCONSIN DEPARTMENT OF WORKFORCE DEVELOPMENT,
Respondent-Respondent.
[Case No. 2006AP1276.]

Sherrieck NELSON, Plaintiff-Appellant,

v.

WISCONSIN DEPARTMENT OF WORKFORCE DEVELOPMENT,
Defendant-Respondent.
[Case No. 2006AP1855.]

Court of Appeals

*Nos. 2006AP1276, 2006AP1855. Oral argument May 15, 2007.
—Decided June 19, 2007.*

2007 WI App 167

(Also reported in 737 N.W.2d 74.)

420

On behalf of the petitioner-appellant and plaintiff-appellant, the cause was submitted on the briefs of *Patricia DeLessio* of *Legal Action of Wisconsin, Inc.*, with oral argument by Patricia DeLessio.

On behalf of the respondent-respondent and defendant-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Robert M. Hunter*, assistant attorney general, with oral argument by *Robert M. Hunter*.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J. Yolanda Weston and Sherrieck Nelson appeal from trial court orders denying their petitions for review of decisions of the Division of Hearings and Appeals (DHA).[2] Both women contend that the Department of Workforce Development's (DWD) decision to place them in "unsubsidized employment," based on findings that they are "job ready," is contrary to the Wisconsin statutes implementing the Wisconsin Works (W-2) program.

¶ 2. The issue before us is one of first impression and asks us to determine whether DWD's *Wisconsin Works Manual* (W-2 Manual), which instructs W-2

[2] These two cases were consolidated for appeal purposes because they result from analogous fact situations and present the same legal issue.

agencies with respect to the administration of the W-2 program, is consistent with Wis. Stat. §§ 49.141 to 49.161 (2003–04).[3] Specifically, we have been asked whether DWD's directive to W-2 agencies that individuals satisfying the requirements of W-2 can be deemed job ready and placed in unsubsidized employment, even though the individuals are not yet employed, comports with § 49.147.

¶ 3. Based on the clear and unambiguous language of Wis. Stat. § 49.147, we conclude that DWD's policy of placing W-2 eligible individuals who are deemed "ready for employment"—but who are nevertheless unemployed—in unsubsidized employment is inconsistent with controlling state law. Consequently, we reverse and remand this matter for further proceedings consistent with this opinion.

## I. Background.

### A. Yolanda Weston

¶ 4. Yolanda Weston applied for assistance through the W-2 program in April 2005. Based on the W-2 Manual, which instructs W-2 agencies regarding how to determine eligibility and placement in W-2 employment positions, Weston was found to be job ready, coded "CMS" (which meant she was to receive case management services), and placed in unsubsidized employment. Weston was given the placement following an assessment, at which time her Financial and Employment Planner (FEP) concluded that: Weston was job ready; had no barriers to employment; had a current work history; and had an educational background to

---

[3] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

compete in the labor market.[4] At the time of her placement, Weston was unemployed.

¶ 5. Weston's CMS designation and unsubsidized employment placement was to last for thirty days, during which time she was required to complete employment-related activities (i.e., search for employment, attend job developer weekly meetings, and participate in job club/employment counseling activities).[5] It is undisputed that individuals who are coded CMS do not receive any wages in conjunction with their W-2 placements.

¶ 6. After Weston completed thirty days in the unsubsidized employment placement, the FEP reviewed her case and determined that she should remain designated as CMS and placed in unsubsidized employment for an additional thirty-day period.[6] Weston requested a

---

[4] An FEP is "a caseworker employed by a Wisconsin [W]orks agency who provides financial or employment counseling services to a participant." WIS. STAT. § 49.141(1)(d).

[5] We note that WIS. STAT. § 49.147(2)(a)1. provides that "[a]n individual who applies for a Wisconsin [W]orks employment position may be required by the Wisconsin [W]orks agency to search for unsubsidized employment during the period that his or her application is being processed as a condition of eligibility." The period of time while an application is being processed is not at issue in this appeal; rather, this appeal involves DWD's placement of individuals in unsubsidized employment with the CMS designation *after* their applications have been processed. An unsubsidized employment placement with a CMS designation is a continuation of the initial search for unsubsidized employment accompanied by intensive case management services provided by the FEP "to facilitate employment at the earliest opportunity." W-2 Manual, § 7.1.1. Case management services encompass the employment-related activities that Weston was required to complete.

[6] DWD maintains that an unsubsidized employment placement for individuals coded CMS is not a long-term placement,

425

fact-finding hearing to challenge her placement.[7] At the hearing, Weston agreed that she had a work history, was capable of working, and was willing to work, but informed the fact finder that she had nevertheless been unable to obtain employment. She further advised the fact finder that due to her lack of income, she and her children were homeless and forced to live with a relative. Notwithstanding these considerations, the fact finder upheld Weston's CMS designation and placement in unsubsidized employment based on her job readiness. Weston then sought review of the fact-finding decision to the DHA.[8]

¶ 7. The DHA administrative law judge (ALJ) affirmed the W-2 agency's determination that Weston was "job ready," and its assignment of Weston to unsubsidized employment based on Weston's admission re-

---

and indeed, the W-2 Manual specifies: "If the participant is unable to find unsubsidized employment within 30 days, the FEP *must consider* placing the individual in a Trial Job or a CSJ employment position." W-2 Manual, § 7.1.1 (emphasis added). However, the "must consider" language does not mandate placement in a subsidized employment position following the thirty-day period. The record reflects that Weston was coded as CMS on April 26, 2005. On May 25, 2005, the FEP reviewed Weston's case and determined she should remain coded as CMS.

[7] In accordance with WIS. STAT. § 49.152(1), "[a]ny individual . . . who believes . . . that the employment position in which the individual was placed is inappropriate, may petition the Wisconsin [W]orks agency for a review of such action." This review is known as fact finding.

[8] Pursuant to WIS. STAT. § 227.43(1)(by), the administrator of the division of hearings and appeals shall "[a]ssign a hearing examiner to preside over any hearing of a contested case that is required to be conducted by the department of workforce development under subch. III of ch. 49 and that is not conducted by the secretary of workforce development."

garding her work history and willingness to work, coupled with a prior final decision issued by the DWD Deputy Secretary affirming placements based on job readiness. Weston then petitioned the trial court for judicial review of DHA's decision, and the trial court affirmed.

## B. *Sherrieck Nelson*

¶ 8. In July 2005, Sherrieck Nelson applied for W-2 assistance. An FEP determined that Nelson satisfied the requirements necessary to be eligible for W-2 assistance and assigned Nelson to an unsubsidized employment placement based on her job readiness, which resulted in her being coded CMS. When Nelson received her placement, she was unemployed and did not have any income.

¶ 9. Nelson subsequently challenged her placement by requesting a fact-finding hearing. She agreed that she was capable of working and had a willing attitude; however, she argued she had not been able to find a job despite having completed all of the expected job search activities. Consequently, Nelson sought placement in a subsidized employment position in order to earn wages. At the hearing, the W-2 agency representative acknowledged that Nelson's CMS placement in unsubsidized employment was not associated with any wages. Nevertheless, the fact finder upheld her CMS designation and placement in unsubsidized employment based on the W-2 Manual.

¶ 10. Nelson sought review of the decision to DHA. The DHA ALJ, in dismissing Nelson's petition for review, referenced the same final decision issued by the DWD Deputy Secretary, sustaining the placement of an unemployed individual in unsubsidized employment on

the basis of job readiness, which was relied upon by the ALJ who presided over Weston's hearing. Nelson petitioned the trial court for judicial review of DHA's decision. The trial court affirmed based on its finding that DWD's CMS designation and unsubsidized employment placement is consistent with a reasonable interpretation of WIS. STAT. § 149.147.

## II. ANALYSIS.

■

¶ 11. The relevant facts are not in dispute and the sole question for this appeal is whether, pursuant to this state's statutes governing the W-2 program, unsubsidized employment placements are appropriate for individuals who are deemed "job ready" but who remain unemployed. *See* WIS. STAT. §§ 49.141–49.161. In an appeal from a trial court arising out of an administrative review proceeding, we review the decision of the agency, not the decision of the trial court or ALJ. *See Bosco v. LIRC*, 2004 WI 77, ¶ 16, 272 Wis. 2d 586, 681 N.W.2d 157; *West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 11 n.8, 357 N.W.2d 534 (1984) (review of an administrative agency's decision in an appeal to the court of appeals is identical in scope to the review in the trial court).

■

¶ 12. "Interpretation of a statute and its application to undisputed facts are questions of law which this court reviews de novo." *Tannler v. DHSS*, 211 Wis. 2d 179, 183, 564 N.W.2d 735 (1997). "[T]he blackletter rule is that a court is not bound by an agency's conclusions of law." *West Bend Educ. Ass'n*, 121 Wis. 2d at 11 (footnote omitted). Nevertheless, we will give deference to an agency's interpretation and application of a law.

*Id.* at 12. In evaluating an agency's interpretation of a statute, there are three separate levels of deference: great weight, due weight, and *de novo* review. *Harnischfeger Corp. v. LIRC,* 196 Wis. 2d 650, 659–60, 539 N.W.2d 98 (1995).

¶ 13. The parties agree that DWD's interpretation of the W-2 statutes should be afforded a due weight level of deference.

> Due weight deference is appropriate when the agency has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court. The deference allowed an administrative agency under due weight is not so much based upon its knowledge or skill as it is on the fact that the legislature has charged the agency with the enforcement of the statute in question.

*UFE Inc. v. LIRC,* 201 Wis. 2d 274, 286, 548 N.W.2d 57 (1996). Under the due weight standard, "a court need not defer to an agency's interpretation which, while reasonable, is not the interpretation which the court considers best and most reasonable." *Harnischfeger Corp.,* 196 Wis. 2d at 660 n.4.

¶ 14. Thus, we must begin with the language of the applicable statutes. When interpreting a statute, we seek to discern the intent of the legislature by first looking at the statute's plain meaning. *Wisconsin Citizens Concerned for Cranes & Doves v. DNR,* 2004 WI 40, ¶ 6, 270 Wis. 2d 318, 677 N.W.2d 612. "The language of a statute is read in the context in which it appears in relation to the entire statute so as to avoid an absurd result." *Id.* In addition, "[w]ords and phrases

are generally accorded their common everyday meaning, while technical terms or legal terms of art are given their accepted legal or technical definitions. Words that are defined in the statute are given the definition that the legislature has provided." *Id.* (citation omitted).

¶ 15. If our analysis reveals "a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." *Bruno v. Milwaukee County*, 2003 WI 28, ¶ 20, 260 Wis. 2d 633, 660 N.W.2d 656. We will only consult extrinsic sources if the statute is ambiguous. *Wisconsin Citizens*, 270 Wis. 2d 318, ¶ 6.

> A statute is not ambiguous merely because the parties disagree as to its meaning, or because the circuit court and court of appeals reached different conclusions; rather, a statute is ambiguous when it is readily susceptible to two or more meanings by reasonably well-informed individuals. The test for ambiguity therefore examines the language of the statute "to determine whether 'well-informed persons *should have* become confused,' that is, whether the statutory . . . language reasonably gives rise to different meanings."

*Id.*, ¶ 7 (quoting *Bruno*, 260 Wis. 2d 633, ¶ 21) (emphasis and ellipses in *Wisconsin Citizens*; citation omitted). By first looking at the statute's plain meaning, we are precluded " 'from resorting to legislative history to uncover ambiguities in a statute otherwise clear on its face.' " *Id.*, ¶ 8 (citation omitted).

*A. The W-2 Program*

¶ 16. This case requires us to interpret our state's assistance program for families with dependent children, titled "Wisconsin [W]orks," which is outlined in

WIS. STAT. §§ 49.141 to 49.161. WIS. STAT. § 49.141(1)(p). Wisconsin's W-2 program was enacted in 1996 and is primarily funded by annual block grants provided by the federal Temporary Assistance to Needy Families (TANF) program. *See* 42 U.S.C. §§ 601–619. TANF was designed to afford states flexibility in their administration of programs designed to:

> (1) provide assistance to needy families so that children may be cared for in their own homes or in the homes of relatives;

> (2) end the dependence of needy parents on government benefits by promoting job preparation, work, and marriage;

> (3) prevent and reduce the incidence of out-of-wedlock pregnancies and establish annual numerical goals for preventing and reducing the incidence of these pregnancies; and

> (4) encourage the formation and maintenance of two-parent families.

42 U.S.C. § 601(a).

¶ 17. DWD is the agency responsible for promulgating administrative rules governing the W-2 program. *See, e.g.,* WIS. STAT. §§ 49.145(1), 49.146, 49.147(2). In addition, DWD is to "maintain oversight responsibility for administration of the Wisconsin [W]orks program by contracted administrative agencies." WIS. ADMIN. CODE DWD § 12.04(1);[9] *see also* WIS. STAT. § 49.35(1)(a). Pursuant to this statutory authority, DWD instituted WIS. ADMIN. CODE DWD ch. 12, which requires all W-2

[9] All code provisions are current through Wisconsin Administrative Register No. 616, April 2007.

431

agencies to comply with WIS. STAT. §§ 49.141 to 49.161. *See* WIS. ADMIN. CODE DWD §§ 12.01, 12.05(1).

¶ 18. No later than five working days after it receives a signed W-2 application, a W-2 agency must hold a personal interview with the applicant. WIS. ADMIN. CODE DWD § 12.06(4)(a). The agency then, "with reasonable promptness," is to determine the appropriate placement for the applicant in a W-2 employment position. WIS. ADMIN. CODE DWD § 12.06(4)(c).

## B. W-2 Placements

¶ 19. WISCONSIN STAT. § 49.147 specifies that there are four types of placements within the W-2 program: (1) unsubsidized employment; (2) trial jobs; (3) community service jobs; and (4) transitional placements. In pertinent part, the statue provides:

> **49.147 Wisconsin works; work programs and job access loans. (1)** DEFINITIONS. In this section:
>
> (c) "Unsubsidized employment" means employment for which the Wisconsin [W]orks agency provides no wage subsidy to the employer including self-employment and entrepreneurial activities.
>
> **(1m)** EDUCATIONAL NEEDS ASSESSMENT. (a) A Wisconsin Works agency shall conduct an educational needs assessment of each individual who applies for a Wisconsin Works employment position. If the individual and the Wisconsin Works agency determine that the individual needs, or would benefit from, education or training activities, including a course of study meeting the standards established under s. 115.29 (4) (a) for the granting of a declaration of equivalency of high school graduation, and if the Wisconsin Works agency determines that the individual is eligible for a Wisconsin Works employment position, the Wisconsin Works

agency shall include education or training activities in any employability plan developed for the individual.

(b) If the Wisconsin Works agency determines that the appropriate placement for an individual is in unsubsidized employment or a trial job and that the individual needs and wishes to pursue basic education, including a course of study meeting the standards established under s. 115.29 (4) (a) for the granting of a declaration of equivalency of high school graduation, the Wisconsin Works agency shall pay for the basic education services identified in the employability plan developed for the individual.

(2) UNSUBSIDIZED EMPLOYMENT. (a) *Job search, orientation and training activities.* 1. An individual who applies for a Wisconsin [W]orks employment position may be required by the Wisconsin [W]orks agency to search for unsubsidized employment during the period that his or her application is being processed as a condition of eligibility. A participant in a Wisconsin [W]orks employment position shall search for unsubsidized employment throughout his or her participation. The department shall define by rule satisfactory search efforts for unsubsidized employment.

2. A Wisconsin [W]orks agency may require an applicant for a Wisconsin [W]orks employment position to participate in job orientation during the period that his or her application is being processed as a condition of eligibility. A Wisconsin [W]orks agency may require a participant in a Wisconsin [W]orks employment position to engage in training activities in accordance with rules promulgated by the department as part of the participant's participation requirements.

(b) *Job search assistance.* A Wisconsin [W]orks agency shall assist a participant in his or her search for unsubsidized employment. In determining an appropriate placement for a participant, a Wisconsin [W]orks

433

agency shall give priority to placement in unsubsidized employment over placements under subs. (3) to (5).

**(3)** TRIAL JOBS. (a) *Administration.* A Wisconsin [W]orks agency shall administer a trial job program as part of its administration of the Wisconsin [W]orks program to improve the employability of individuals who are not otherwise able to obtain unsubsidized employment, as determined by the Wisconsin [W]orks agency, by providing work experience and training to assist them to move promptly into unsubsidized employment. In determining an appropriate placement for a participant, a Wisconsin [W]orks agency shall give priority to placement under this subsection over placements under subs. (4) and (5) . . . .

. . . .

**(4)** COMMUNITY SERVICE JOB. (a) *Administration.* A Wisconsin [W]orks agency shall administer a community service job program as part of its administration of Wisconsin [W]orks to improve the employability of an individual who is not otherwise able to obtain employment, as determined by the Wisconsin [W]orks agency, by providing work experience and training, if necessary, to assist the individual to move promptly into unsubsidized public or private employment or a trial job. In determining an appropriate placement for a participant, a Wisconsin [W]orks agency shall give placement under this subsection priority over placements under sub. (5) . . . .

. . . .

**(5)** TRANSITIONAL PLACEMENT. (a) *Additional eligibility criteria.* An individual is eligible to participate in a transitional placement under this subsection if, in addition to meeting the eligibility requirements under s. 49.145, any of the following conditions is met with respect to the individual:

434

1. The Wisconsin [W]orks agency determines, on the basis of an independent assessment by the division of vocational rehabilitation or similar agency or business, that the individual has been incapacitated, or will be incapacitated, for a period of at least 60 days.

2. The Wisconsin [W]orks agency determines that the individual is needed in the home because of the illness or incapacity of another member of the Wisconsin [W]orks group.

3. The Wisconsin [W]orks agency determines that the individual is incapable of performing a trial job or community service job.

(b) *Administration.* 1. The Wisconsin [W]orks agency shall assign a participant under this subsection to work activities such as a community rehabilitation program, as defined by the department, a job similar to a community service job or a volunteer activity . . . .

WIS. STAT. § 49.147. Only trial jobs, community service jobs, and transitional placements are " 'Wisconsin [W]orks employment position[s].' " WIS. STAT. § 49.141(1)(r). Participants in Wisconsin Works employment positions receive wages, which are subsidized by the state, *see* WIS. STAT. § 49.148, while individuals placed in unsubsidized employment positions do not, *see* § 49.147(1)(c).

¶ 20. As indicated, the legislature has specifically chosen to provide a definition for the term unsubsidized employment which "means *employment* for which the Wisconsin [W]orks agency provides no wage subsidy to the employer including self-employment and entrepreneurial activities." WIS. STAT. § 49.147(1)(c) (emphasis added). In addition, W-2 agencies are to give priority to placing individuals in unsubsidized employment positions over placements in trial jobs, community service jobs, or transitional placements. Sec. 49.147(2)(b).

## C. The W-2 Manual

¶ 21. To carry out its statutory responsibilities, DWD publishes the W-2 Manual, which instructs W-2 agencies with respect to the implementation of the W-2 program and reflects DWD's policies and procedures for administering W-2 benefits and services. The W-2 Manual provides that the goal of W-2 "is to provide necessary and appropriate services to prepare individuals to work, and to obtain and maintain viable, self-sustaining employment, which will promote economic growth." W-2 Manual, § 1.1.0. It describes the various W-2 placements as follows:

### 1.2.0 EMPLOYMENT LADDER

It is W-2's goal to connect people with work as soon as possible. This is done by immediate placement on the W-2 employment ladder. The employment ladder consists of four rungs. Individuals who are capable of working may be placed on the Unsubsidized Employment rung of the ladder. Individuals who are not ready may be placed on the subsidized employment rung or one of the work experience training rungs.

Starting with the highest rung on the employment ladder, these rungs are:

**Unsubsidized Employment**
Goal for all Participants

**Trial Job**
(W-2 Subsidized Employment)

**Community Service Jobs (CSJ)**
(W-2 Work Experience Training)

**W-2 Transition (W-2 T)**
(W-2 Work Experience Training)

The W-2 agency must ensure that each participant:

436

1. Enters the highest possible rung on the employ-
 ment ladder on which the participant is capable
 of participating; *and*

2. Moves up to the next appropriate rung at the
 earliest opportunity, with unsubsidized employ-
 ment the ultimate goal. Each new rung should
 bring with it greater self-sufficiency.

W-2 Manual, § 1.2.0.

¶ 22. The W-2 Manual further specifies that un-
subsidized employment encompasses three placement
categories: (1) "[u]nemployed applicants *who are
ready* for unsubsidized employment" (coded as CMS);[10]

---

[10] **7.1.0 UNSUBSIDIZED EMPLOYMENT**

Unsubsidized employment is the highest and most desirable rung
on the W-2 employment ladder. The FEP must first consider
unsubsidized employment for all W-2 applicants. Applicants who
meet the financial and nonfinancial eligibility criteria are not
entitled to a W-2 employment position. If the applicant meets the
eligibility criteria, but is employed or has a strong employment
history and skills, the applicant may be placed on the Unsubsi-
dized Employment (UE) rung of the W-2 ladder.

. . . .

Unemployed applicants who are ready for unsubsidized employ-
ment may be placed on the UE rung and coded as CMS.

. . . .

**7.1.1 Unemployed Individuals Capable of Obtaining Em-
ployment (CMS)**

Unemployed individuals who have been assessed as having the
capability of obtaining full-time employment may be placed on the
Unsubsidized Employment rung and coded as CMS as long as they
continue to meet financial and nonfinancial eligibility criteria.
However, individuals may only be identified by the code CMS if
they state in writing that they wish to receive case management
services.

. . . .

437

(2) "[a]pplicants *who are employed* when they apply for W-2" (coded as CMU); and (3) *"[e]mployed participants* who have moved up the W-2 ladder to unsubsidized employment" (coded as CMF). W-2 Manual, § 7.1.0. (emphasis added). Therefore, DWD's administration of this state's W-2 program presently allows W-2 agencies to determine that eligible individuals "who are ready for unsubsidized employment" (i.e., those coded CMS)— and yet are unemployed—may be placed in unsubsidized employment. The issue is whether DWD's administration of the W-2 program in this regard complies with state law governing the W-2 program.

¶ 23. DWD contends that state law supports its policy of placing eligible, job ready individuals in unsubsidized employment. DWD bases its argument solely on the following statutory language:

**(1m)** EDUCATIONAL NEEDS ASSESSMENT.

Unemployed individuals placed in Unsubsidized Employment must receive intensive case management services from the FEP to facilitate employment at the earliest opportunity.

. . . .

**7.1.1.1 General Characteristics of Unemployed Individuals coded CMS**

An unemployed individual who is appropriate for placement into Unsubsidized Employment and coded CMS has all of the following characteristics:

- Has no barriers to work which cannot be addressed through supportive services;

- Is capable of working and has a willing attitude;

- Has a steady and/or recent work experience;

- Has an education or training background that allows the individual to compete for available jobs in the unsubsidized labor market.

W-2 Manual, §§ 7.1.0, 7.1.1, 7.1.1.1.

438

. . . .

> (b) If the Wisconsin Works agency determines that the appropriate placement for an individual is in unsubsidized employment or a trial job and that the individual needs and wishes to pursue basic education . . . the Wisconsin Works agency shall pay for the basic education services identified in the employability plan developed for the individual.

WIS. STAT. § 49.147(1m)(b). DWD submits that the aforementioned language evidences an intent by the legislature that individual applicants might be appropriately placed in unsubsidized employment without having a job or receiving a wage subsidy from a W-2 agency. Based upon our review, we cannot make the leap that DWD requests.

¶ 24. DWD's reliance on WIS. STAT. § 49.147(1m)(b) is misplaced as its reading takes the statutory provision out of context. Reading statutory language in isolation is contrary to the principles of statutory construction employed by courts of this state:

> Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.

*State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. When § 149.147(1m)(b) is read in relation to § 149.147(1)(c), the plain language reveals little‑more than the legislature's desire to provide those individuals *appropriately placed* in unsubsidized employment or trial jobs with the opportunity to pursue basic education.

¶ 25. In order to determine whether placement is appropriate, we must refer to the legislature's definition of unsubsidized employment, which "means *employment* for which the Wisconsin [W]orks agency provides no wage subsidy to the *employer.*" Wis. Stat. § 49.147(1)(c) (emphasis added). Given that the statutory definition necessitates that there be "employment" and an "employer," we cannot reconcile how *unemployed* individuals such as Weston and Nelson can appropriately be placed in unsubsidized employment.

¶ 26. Courts of this state cannot alter the plain language of a statute. *See Baldwin v. LIRC*, 228 Wis. 2d 601, 625, 599 N.W.2d 8 (Ct. App. 1999). If the legislature had desired to, it could have easily defined unsubsidized employment so that it would include situations where applicants have secured employment for which the Wisconsin Works agency does not provide a wage subsidy *and* situations where applicants are ready for such employment, but nevertheless are unemployed. The legislature, however, did not do so. Therefore, we decline to rewrite the statute by further defining the term "unsubsidized employment" to include "job readiness" in addition to actual employment. *Cf. Bruno*, 260 Wis. 2d 633, ¶¶ 14, 16 (interpreting the definition of "retirement" and finding that the county's interpretation ignored the plain language and added words that were not there).

¶ 27. We disagree with DWD's contention that pursuant to Wis. Stat. § 47.147(1m)(b), if the W-2 agency determines that applicants do not need education services or if the applicants do not wish to pursue such services, "they—[like Weston and Nelson]—are nevertheless appropriately placed in 'unsubsidized employment' because they are 'job ready' and can immediately enter the workforce, because they have the skills education and work history to do so." We are unable to

440

find support for this argument based on the plain language of the W-2 statutes, which make no mention of "job readiness" as a factor that is to be considered when making an unsubsidized employment placement. Furthermore, while Weston and Nelson agree that they are "job ready," they nevertheless were not able to immediately enter the workforce. Both women remained jobless and without means to provide for themselves and their families, even after being deemed eligible for participation in the W-2 program due to their placement in unsubsidized employment. This placement policy defeats the purpose of W-2 which includes assisting needy families, *see* 42 U.S.C. § 601(a), and is not consistent with controlling state law requiring that unsubsidized employment placements involve actual employment.

¶ 28. In its brief, DWD writes:

> At base, W-2 is a *jobs* program. It is not welfare. It is not unemployment. So, when an individual [such as Weston or Nelson], who has the skills and education necessary for work and a history of working, becomes unemployed, W-2 is not intended and cannot be made to fit the bill.

(Emphasis in brief.) There is nothing in the record that would indicate that Weston and Nelson are seeking welfare and unemployment.[11] Rather, the record reflects that these women sought employment so that they could earn money to support themselves and their

---

[11] The dissent characterizes the W-2 program's services and benefits as "welfare-like payments or assistance." Dissent, ¶ 33. This characterization overlooks that W-2 is a work-based program. W-2 Manual, § 1.1.0. W-2 program participants do not receive handouts; rather, they are required to engage in a variety of work-related activities. Individuals placed in trial jobs

families. Their placement on the unsubsidized employment "rung" of the W-2 employment ladder left them without any employment, subsidized or otherwise. We cannot see how such a placement fulfills the goals of W-2 and it certainly cannot be said that unsubsidized employment under these circumstances "is the highest and most desirable rung on the W-2 employment ladder." W-2 Manual, § 7.1.0. Consequently, we agree with Weston and Nelson that DWD's interpretation and application of WIS. STAT. § 49.147 with respect to their placement in unsubsidized employment is not reasonable.

¶ 29. Therefore, we conclude that WIS. STAT. § 49.147 unambiguously requires that placement in unsubsidized employment, by its very definition, requires that there be employment. "Employment" is not an ambiguous term and we cannot envision any circumstances where a placement requiring employment could ever be construed to be appropriate for individuals who

---

and community service jobs are generally expected to participate forty hours per week. *Id.*, §§ 7.3.2, 7.4.1.2. Similarly, participants in W-2 transition placements are placed in full-time activity whenever possible. *Id.*, § 7.4.2.2.

Furthermore, we do not see how the majority's opinion will open "welfare floodgates," Dissent, ¶ 39, given that the W-2 program contains a number of eligibility requirements, both financial and nonfinancial. WIS. STAT. § 49.145. In addition, there are time limits associated with the various subsidized employment placements along with an overall limit on time spent in the W-2 program. *See, e.g.,* WIS. STAT. §§ 49.145(2)(n), 49.147(3)(c), 49.147(4)(b), 49.147(5)(b)2. In light of these restrictions, the scope of our decision cannot reasonably be read to "encompass everyone who cannot find work, even though they have the requisite skills and are thus employable," as the dissent contends. Dissent, ¶ 33.

are unemployed—but "ready for employment"—as DWD contends. DWD's interpretation of the applicable statutory provisions ignores their plain language and adds words that are not there. *Cf. Bruno*, 260 Wis. 2d 633, ¶ 16. "Employment" and "ready for employment" are not the same thing. Under the plain language of the statute, Weston and Nelson's placement into unsubsidized employment was improper. Because we find that the meaning of unsubsidized employment is plain and that it necessarily excludes unemployed individuals, we need not inquire further or resort to extrinsic sources. *Kalal*, 271 Wis. 2d 633, ¶ 46.

¶ 30. Next, DWD contends that Weston and Nelson waived their claims that it was inappropriate for the W-2 agencies to designate them as being ready for employment and to place them on the unsubsidized employment rung of the W-2 employment ladder because they did not challenge their status as job ready below. *See Bunker v. LIRC*, 2002 WI App 216, ¶ 15, 257 Wis. 2d 255, 650 N.W.2d 864 ("It is settled law that to preserve an issue for judicial review, a party must raise it before the administrative agency."). While Weston and Nelson did not question the propriety of the W-2 agencies' determinations that they were job ready, the record clearly reflects that throughout the course of the administrative proceedings, both women contested whether their placement in unsubsidized employment on the basis of their job readiness was allowed under state law. As such, there has been no waiver.

¶ 31. In rendering our decision, we are cognizant of the fact that Wis. Stat. § 49.141(4)[12] does not entitle

[12] Wisconsin Stat. § 49.141(4) makes clear: "Nonentitlement. Notwithstanding fulfillment of the eligibility require-

an individual for W-2 services or benefits. We emphasize that we do not hold that Weston and Nelson are *entitled* to subsidized employment; rather, we merely hold that where a W-2 agency has decided to place an eligible individual on the W-2 employment ladder, if the individual is not employed, state law prohibits a W-2 agency from placing him or her in unsubsidized employment.

¶ 32. This holding is in keeping with the statutory definition of unsubsidized employment, which "means employment." WIS. STAT. § 49.147(1)(c). It follows then that the only proper placements within the W-2 program for Weston and Nelson will be on one of the other rungs of the employment ladder. We leave the determination as to which placement is proper in light of this opinion to the appropriate W-2 agencies. Consequently, we reverse and remand for further proceedings consistent with this opinion. *See* WIS. STAT. § 227.57(5) (2005–06).[13]

*By the Court.*—Orders reversed and causes remanded with directions.

¶ 33. FINE, J. (*dissenting*). The Majority, with understandable sympathy for those who can work but

---

ments for any component of Wisconsin [W]orks, an individual is not entitled to services or benefits under Wisconsin [W]orks." We acknowledge that the ultimate determination of W-2 eligibility lies with DWD and the W-2 agencies it contracts with to administer the W-2 program. Notwithstanding, the administration of W-2 benefits and services must follow state law.

[13] WISCONSIN STAT. § 227.57(5) (2005–06) provides:

> The court shall set aside or modify the agency action if it finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action, or it shall remand the case to the agency for further action under a correct interpretation of the provision of law.

cannot find jobs, has ignored clear statutory language while claiming obeisance to it. The Majority has thus gutted legislation that authorizes welfare-like payments or assistance only to those who, for reasons *beyond the control of the job marketplace,* cannot find work. The legislature has appropriately reserved those welfare-like payments or assistance for those who are not employable because of either mental or physical impairments or lack of work-skills. The Majority in effect rewrites the statute to expand the roster of those eligible for work subsidized by Wisconsin's taxpayers (who, of course, pay into the tax maw, and do not receive tax subsidies to supplement *their* wages) to encompass everyone who cannot find work, even though they have the requisite skills and are thus employable. Accordingly, I respectfully dissent.

¶ 34. Unless there is a constitutional infirmity or lack of clarity, we take and apply statutes as they are written—bound by what " 'the lawgiver promulgated,' " not by what we would like the statute to say. *See State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶¶ 44, 52, 271 Wis. 2d 633, 662, 667, 681 N.W.2d 110, 123–124, 126 (quoted source omitted). So, let's look at the statute.

¶ 35. First, the intent of the statute is clear: "Notwithstanding fulfillment of the eligibility requirements for any component of Wisconsin works, an individual is not entitled to services or benefits under Wisconsin works." WIS. STAT. § 49.141(4). Thus, the statute directs that a person seeking entry into the Wisconsin Works program be evaluated by a Wisconsin Works agency. WIS. STAT. § 49.147(1m)(a). The agency determines into which group the person should be placed—eligible education and training on the one

hand, *ibid.*, or, on the other hand, either "unsubsidized employment or a trial job," § 49.147(1m)(b).[1]

¶ 36. Second, contrary to the Majority's view, there is *nothing* in the statute that says that there must be a job opening for a Wisconsin Works participant before he or she can be placed in the "unsubsidized employment" cohort—persons who are employable because they have the requisite skills and facility to *compete* in the job market. The section from which the Majority hangs its bottom-line conclusion merely *defines* "unsubsidized employment": " 'Unsubsidized employment' means employment for which the Wisconsin works agency provides no wage subsidy to the employer including self-employment and entrepreneurial activities." WIS. STAT. § 49.147(1)(c).

¶ 37. To read the definition of "unsubsidized employment" in WIS. STAT. § 49.147(1)(c), as the Majority

---

[1] WISCONSIN STAT. § 49.147(1m) reads in full:

(a) A Wisconsin Works agency shall conduct an educational needs assessment of each individual who applies for a Wisconsin Works employment position. If the individual and the Wisconsin Works agency determine that the individual needs, or would benefit from, education or training activities, including a course of study meeting the standards established under s. 115.29 (4) (a) for the granting of a declaration of equivalency of high school graduation, and if the Wisconsin Works agency determines that the individual is eligible for a Wisconsin Works employment position, the Wisconsin Works agency shall include education or training activities in any employability plan developed for the individual.

(b) If the Wisconsin Works agency determines that the appropriate placement for an individual is in unsubsidized employment or a trial job and that the individual needs and wishes to pursue basic education, including a course of study meeting the standards established under s. 115.29 (4) (a) for the granting of a declaration of equivalency of high school graduation, the Wisconsin Works agency shall pay for the basic education services identified in the employability plan developed for the individual.

does, to preclude placement in the "unsubsidized employment" cohort persons who have the requisite employment skills to compete in the job market (as both Yolanda Weston and Sherrieck Nelson concede they have, Majority, ¶¶ 6, 9, 27) but cannot find a job, inserts an implied clause in § 49.147(1)(c) akin to the italicized words I've appended to the end of what § 49.147(1)(c) currently says: " 'Unsubsidized employment' means employment for which the Wisconsin works agency provides no wage subsidy to the employer including self-employment and entrepreneurial activities, *and if someone participating in the Wisconsin works program cannot find unsubsidized employment, the Department must supplement his or her wages or provide some other species of employment so the person can support him- or herself and dependents.*"

¶ 38. The Majority's reconstruction of Wis. Stat. § 49.147(1)(c) is *contrary* to what the legislature intended, as reflected by not only the language it used in crafting the Wisconsin Works program, but also by how the administrative agency the legislature entrusted with implementing Wisconsin Works has applied that language.

¶ 39. The real-world result of what the Majority does here will open the welfare floodgates to others in Wisconsin with employment skills but no job. *See* Wis. Stat. § 49.141(3) ("Any individual may apply for any component of Wisconsin works."). It will also make Wisconsin a "welfare magnet," which will attract unemployed from other states. *See Shapiro v. Thompson*, 394 U.S. 618 (1969) (states may not close their borders to those seeking more generous welfare benefits), *overruled in part on other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974). And, of course, that will add to an already heavy Wisconsin tax burden, making it less

447

attractive for businesses to either come here or to stay here, which will, of course, mean more employable persons who cannot find jobs. And so it goes . . . The pity of it is, is that the *statute,* if read properly, as the words and context require, would permit no such thing.

¶ 40. I would affirm.